IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 6, 2000 Session

# WILLIAM B. SHEARRON, ET AL. v. THE TUCKER CORPORATION, ET AL.

**An Appeal from the Chancery Court for Montgomery County**
**No. 89-62-323      James E. Walton, Judge**

---

**No. M2000-00624-COA-R3-CV - Filed October 2, 2001**

---

This is a nuisance case. The plaintiff landowners sued the developer of a subdivision adjacent to their property for digging a drainage ditch that caused frequent flooding. The defendant developer filed counter-claims, including an allegation that the plaintiffs and the previous owners of his property had conspired to breach the agreement to sell the property to the developer. The developer also argued that the city had taken steps to alleviate the flooding. The trial court found that the developer had created a permanent nuisance by changing the natural flow of water across his property, and dismissed the developer's counter-claims. On appeal, we affirm the trial court's finding of a nuisance, but conclude that the circumstances created both a temporary and a permanent nuisance, and remand for recalculation of damages based on this holding.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

James D. Kay, Jr., John B. Enkema, Nashville, Tennessee, for the appellants, The Tucker Corporation and Richard Tucker, Individually.

John L. Mitchell, Ross H. Hicks, for the appellees, William B. Shearron and Sandra Shearron.

Gregory P. Patton, Clarksville, Tennessee, for the appellees, James Paul Richardson and wife, Evelyn Juanita Richardson, Estate of Joe L. Richardson, Jr., and Ruby I. Richardson.

## OPINION

This is a nuisance case. In this case, William B. Shearron, Jr., and his wife, Sandra Shearron (collectively "Shearrons") filed suit against The Tucker Corporation and Richard B. Tucker (collectively "Tucker"). Tucker is a developer who developed a subdivision adjacent to the

Shearrons' home. In developing the subdivision, Tucker dug a drainage ditch on his property. In the lawsuit, the Shearrons alleged that the drainage ditch caused frequent flooding on the Shearrons' property and that Tucker had thereby created a nuisance. The Shearrons requested an injunction requiring Tucker to correct the problem. In the alternative, the Shearrons sought money damages.

Tucker filed an answer in which he asserted, *inter alia*, that the Shearrons were contributorily negligent in causing their property to flood. In addition, Tucker filed a third party complaint against Richardson and Richardson, Inc., James Paul Richardson and his wife, Evelyn Juanita Richardson, Joe L. Richardson, Jr.,[1] and his wife, Ruby I. Richardson (collectively "Richardsons").[2] The Richardsons originally owned the land on which Tucker developed his subdivision ("the Richardson farm"). Tucker alleged in his amended third party complaint that the Richardsons negligently advised him to build the drainage ditch, and that Richardson and Richardson, Inc. negligently constructed the ditch, which resulted in the flooding problem. Tucker also asserted that the Shearrons and the Richardsons conspired to undermine his purchase of the Richardson farm by withholding a 0.6 acre tract that was supposed to be included in the transfer. Tucker contended that the Richardsons breached the contract for sale of the property by failing to include the 0.6 acre tract, and that the Shearrons were liable for inducing the Richardsons' breach. Tucker filed an amended answer and counterclaim asserting that the Shearrons could not recover for nuisance because they did not have "clean hands," and asserted a claim against the Shearrons for defamation.

Subsequently, Tucker nonsuited his third party complaint against Richardson and Richardson, Inc. for negligence. The trial court later dismissed Tucker's defamation claim against the Shearrons, as well as his conspiracy claims against the Shearrons and Richardsons. The only claims remaining for trial were the Shearrons' nuisance claim against Tucker, and Tucker's claim for breach of contract against the Richardsons and inducement to breach of contract against the Shearrons.

A bench trial was held on December 16-17, 1999. At trial, William Shearron testified that he and his wife had lived at 2998 Trough Springs Road since 1983. The evidence established that the Shearrons' property was bounded by Trough Springs Road on the north, and the Richardson farm on the west. The Richardson farm also fronted Trough Springs Road. In July 1986, the Richardsons sold their farm to Tucker, who planned to develop it into the Savannah subdivision. Lots 1 and 2 of the subdivision bordered the Shearrons' property. Tucker dug a drainage ditch along the eastern border of lots 1 and 2, abutting the Shearrons' property, to allow water to flow toward Trough Springs Road, under a culvert, and into a pond located on the other side of the road. Mr. Shearron testified that the drainage ditch measured about 7 or 8 feet deep, and about 35 to 45 feet wide.

Mr. Shearron testified that the first major flood occurred on Christmas Eve, 1988. He said that once before, while they were constructing their home in 1983, he had noticed "minimal"

---

[1] Joe Richardson died in 1995. His estate was substituted as a party to this case.

[2] Sandra Shearron is the daughter of Joe and Ruby Richardson, and the niece of James and Evelyn Juanita Richardson.

flooding from the pond across the street. However, Mr. Shearron denied that flooding had ever occurred on the part of his property which abutted the Richardson farm. Mr. Shearron said that, after the Savannah subdivision was developed, his property would flood approximately three or four times per year. On occasion, rocks, dirt, and other debris would wash down from the Tucker property and deposit in the Shearrons' yard, and when the drainage ditch flooded, the water often spread 50 to 75 feet from culvert. On at least one occasion, the flooding entered the crawl space of the Shearrons' house, and they had to replace their water heater and locate it elsewhere in their garage so it would not be susceptible to flood damage. In his deposition, Tucker did not dispute that the Shearrons' property flooded, nor did he dispute that the flooding was caused by the drainage ditch.

Mr. Shearron testified that he often had to reseed and fertilize his yard after floods occurred. In addition, he lost a garden shed worth approximately $350 to $400, had to replace and relocate his water heater at a cost of approximately $600, and lost several trees as well. Mr. Shearron testified that the flooding had resulted in a stigma attaching to his property, that it was called "Lake Tucker." He admitted that, since the City of Clarksville had installed an underground pipe and an enlarged culvert under Trough Springs Road in 1998 to alleviate the problem, no flooding had occurred. He maintained that there had been no heavy rainfall to test the new pipe and culvert, and observed that during a recent rainfall, the opening to the new pipe was almost totally submerged in water. However, Jim Durrett, Director of Streets for the City of Clarksville, testified that the system was designed for "the hundred-year storm," and that recently there was a "big rain that probably would have maxed the system out, and it carried it."

Craig Johnson, a real estate appraiser, testified on behalf of the Shearrons. He opined that the value of the Shearrons' house and the 4.7 acres accompanying it had been diminished by $43,500, due to "market stigma" associated with the flooding. On cross examination, Johnson admitted that he had never before appraised residential property in Montgomery County, and that he used only one property, located in Oak Grove, Kentucky, to measure the "market stigma" associated with prior flooding history.

Mr. Shearron testified that, prior to filing suit against Tucker, he hired a surveyor to delineate the boundaries of his property. The surveyor discovered a pie-shaped wedge of land totaling about 0.6 acres between Shearron's property and Lots 1 and 2, which were originally part of the Richardson farm. By mistake, the 0.6 acres was not transferred to Tucker, and the Richardsons retained title to it. By that time, Mr. Shearron testified, the Shearrons and Richardsons thought Tucker had already built out lots 1 and 2 and sold them to homeowners. Tucker had a 20 foot drainage easement adjacent to this property. Consequently, the Shearrons believed that the 0.6 acres was "void property," and that the only logical thing for the Richardsons to do was to transfer the 0.6 acre tract to the Shearrons. Mr. Shearron denied that he and his wife or the Richardsons sought to harm Tucker by withholding the 0.6 acres from him. Mr. Shearron denied that Tucker would be able to eliminate the flooding problems by utilizing the 0.6 acres, because of its unusual pie-shape. However, it was undisputed that the City of Clarksville ultimately condemned the 0.6 acres and utilized it to eliminate the flooding problem.

Mrs. Shearron testified as well. She corroborated her husband's testimony that they had had no flooding problems prior to development of the Savannah subdivision. She said that, after that, they had flooding problems whenever it rained two inches or more. Regarding the 0.6 acres, Mrs. Shearron testified that her mother, Ruby Richardson, was especially concerned when she found out that the Richardsons had retained title to the 0.6 acres, and she wanted to transfer it immediately so they would not be liable if an accident occurred on the property.

Tucker also testified at trial. Tucker admitted that he changed the natural flow of water across the Richardson farm and directed it toward the Shearrons' property. A benefit of this was to avoid having the water flow across certain lots in the Savannah subdivision. He said that he did not know much water would be diverted to the Shearrons' property.

Tucker testified that, when the flooding problem became apparent, he offered to construct a deepened concrete-lined ditch and enlarge the pipe under Trough Springs Road. He said that the Shearrons responded with two alternatives: Tucker could either re-route the water drainage to its original pattern, or buy their house and one acre for $160,000. No further negotiations occurred until after the Shearrons filed suit. He testified that he did not know that the Richardsons had inadvertently retained title to the 0.6 acres until after the flooding occurred, and it was impossible for him to fix the problem without access to the 0.6 acres. Tucker acknowledged that the surveyor he hired had made the mistake in describing the farm's boundaries in the deed. He said that neither the Shearrons nor the Richardsons told him a mistake was made in his survey, but Tucker admitted that he had never asked them to transfer the 0.6 acres to him.

After the trial concluded, the trial court issued an extensive memorandum opinion. In its opinion, the trial court held that Tucker was liable for creating a permanent nuisance by changing the natural flow of water across the Richardson farm, thereby resulting in regular flooding on the Shearrons' property. He cited the inexperience of the Shearrons' property appraiser, Johnson, in appraising residential property in Montgomery County, and awarded the Shearrons' damages in the amount of $30,000, rather than the $43,500 they sought. The trial court dismissed Tucker's cross-claim against the Richardsons for breach of contract, because Tucker had not shown any damages resulting from the failure to transfer the 0.6 acres. Likewise, the trial court dismissed Tucker's counter-claim against the Shearrons for inducement to breach of contract. From this order, Tucker now appeals.

An appeal from a bench trial is reviewed *de novo*, with a presumption of correctness in the trial judge's findings of fact. *See* Tenn. R. App. P. 13(d). Questions of law are reviewed *de novo* with no presumption of correctness. ***See Ridings v. Ralph M. Parsons***, 914 S.W.2d 79, 80 (Tenn. 1996).

On appeal, Tucker raises several issues, but the primary issue is whether the trial court erred in finding a permanent nuisance, in light of the undisputed testimony that the flooding problem had been "fixed" by the City of Clarksville when it installed an underground pipe and a new culvert

under Trough Springs Road. In addition, Tucker argues that the trial court erred in dismissing his breach of contract and conspiracy claims.

It is well-settled that if a property owner changes the natural flow of water across his land in a manner that causes flooding on adjacent property, he is liable for creating a nuisance. *See Zollinger v. Carter*, 837 S.W.2d 613, 615 (Tenn. Ct. App. 1992). This remains true even if the city or municipality in which the property is located has approved the owner's plan to change the natural drainage pattern. *See id.* In the instant case, Tucker does not dispute that he changed the natural flow of water across the Richardson farm, nor does he dispute that the changes he made caused flooding on the Shearrons' property. Under these circumstances, there is no error in the trial court's finding that Tucker created a nuisance to the Shearrons' enjoyment of their property.

The amount of Tucker's liability for creating the nuisance depends on whether the nuisance is permanent or temporary. A temporary nuisance "can be corrected by the expenditure of labor or money," while a permanent nuisance is one that will "continue indefinitely and is at once productive of all the damage that can ever occur from it." *See Kearney v. Barrett*, No. 01A01-9407-CH00356, 1995 WL 1690, at *2 (Tenn. Ct. App. Jan.4,1995). The measure of damages for a permanent nuisance is the amount of diminution in market value of the property. *See Bennett v. Cumberland Hardwoods, Inc.*, No. 01A01-019111-CH00419, 1992 WL 135808, at *5 (Tenn. Ct. App. June 19, 1992). If the nuisance is temporary, the measure of damages is "the injury to the value of the use and enjoyment of the property, which is usually shown by evidence of the extent that the rental value of the property is diminished by the nuisance," during the period of time in which the nuisance existed. *Id.* (quoting *Pate v. City of Martin*, 614 S.W.2d 46, 48 (Tenn. 1981)).

In *Kearney*, this Court addressed the distinction between a permanent nuisance and a temporary nuisance, stating:

> The common definition of a temporary nuisance describes it as one that can be corrected by the expenditure of labor or money. . . . Conversely, a permanent nuisance is one of such character that it will be presumed to continue indefinitely and is at once productive of all the damage which can ever result from it. . . . Neither of these attempts at classification is entirely satisfactory. Obviously, nearly every nuisance could be abated by the devotion of enough time and money to it; and a permanent improvement to property may, in conjunction with the forces of nature, cause harm only periodically.
>
> In older cases the courts took what seems to us a more pragmatic view and looked at the question of whether the harm resulted from reasonable and lawful operations of the defendant's property. If the defendant's operations were reasonable and lawful (as opposed to negligent) and still interfered with the use and enjoyment of the

plaintiff's property, the nuisance was considered to be permanent. . . . [W]here the damage will continue so long as the defendant maintains operations on his property and no change in operations is contemplated, the nuisance is permanent.

*Kearney*, 1995 WL 1690, at *2 (citations omitted). Thus, under *Kearney*, it appears that the question of whether a nuisance is permanent or temporary depends in part on whether the defendant's operations "still interfere[] with the use and enjoyment of the plaintiff's property." *Id.*

In *Bennett v. Cumberland Hardwoods, Inc.*, No. 01A01-019111-CH00419, 1992 WL 135808 (Tenn. Ct. App. June 19, 1992), a nuisance was created by interference with the natural flow of water, resulting in flooding on the plaintiff's property, as well as the accumulation of trash and debris on the plaintiff's property. The Court found both a temporary and a permanent nuisance, finding that the flooding was a permanent nuisance, while the accumulation of trash and debris could be abated and was therefore a temporary nuisance. *Bennett*, 1992 WL 135808 at *5.

In this case, the flooding can be corrected by the expenditure of labor and money, and in fact has been so corrected. *Id.* The Shearrons argue that the system installed by the City is "untested," and note that Tucker has done nothing to change the flow of water away from the Shearrons' property. They acknowledge that the measures taken by the City "may have alleviated the flooding in part," but contend that water still runs across and underneath their property, resulting in a permanent negative effect on the value of their property. Mr. Shearron testified that the open ditch and pipe under the road made the property less desirable to prospective purchasers.

The burden, of course, is on the Shearrons to prove each element necessary for recovery. *Id.* This includes the fact that the nuisance is permanent, rather than temporary. While the Shearrons characterize the measures implemented by the City in 1997 as "untested," there is a dearth of evidence that the flooding remained a problem after the City's actions. Consequently, to the extent that the flooding has been alleviated, the nuisance must be characterized as temporary.

However, as in *Bennett*, we must conclude that the circumstances create both a temporary nuisance and a permanent nuisance. The Shearrons presented unrefuted testimony that, because of Tucker's interference with the natural flow of water, excessive water flows across and underneath his land, that the open ditch and underground pipe affect the market value of his land, and that a stigma on his property remains for some period of time even if the flooding has been alleviated. These conditions persist so long as Tucker "maintains operations on his property and no change in operations is contemplated. . . ." *Kearney*, 1995 WL 1690, at *2. Therefore, to the extent that the measures taken by the City do not fully remedy the problem, we conclude that there is a permanent nuisance.

Under these circumstances, the damages must be recalculated. For the temporary nuisance caused by the flooding, the measure of damages is "the injury to the value of the use and enjoyment of the property, which is usually shown by evidence of the extent that the rental value of the property is diminished by the nuisance. . ." during the period of time in which the nuisance existed. *Bennett*,

1992 WL 135808, at *5. As to the effects of the nuisance which remain, i.e. the additional water flow across and under the Shearrons' land, the open ditch and underground pipe, and any remaining stigma attached to the property, the effect on the market value of the property must be determined. Therefore, the cause must be remanded for a redetermination of the damages in light of our holding. On remand, the trial court may, in its discretion, hear additional proof on the issue of damages.

Tucker also argues on appeal that the trial court erred in dismissing his counter-claims and cross-claims alleging conspiracy and breach of contract. These claims arise out of the 0.6 acres that, Tucker claims, should have been transferred to him under the sale contract with the Richardsons. The trial court dismissed Tucker's breach of contract cross-claim against the Richardsons and his counter-claim for inducement to breach of contract against the Shearrons because Tucker could not show that he suffered any damages as a result of the Richardsons' failure to convey the 0.6 acres. It is undisputed that Tucker developed his subdivision, and there was no evidence that he received less money for the lots that would have included the 0.6 acres. There was no other evidence of damages from the failure to convey the 0.6 acres. Under these circumstances, we find no error in the trial court's dismissal of Tucker's cross-claim for breach of contract against the Richardsons, as well as his counter-claim for inducement to breach of contract against the Shearrons. In addition, we find no error in the trial court's dismissal of Tucker's conspiracy claim. As to any remaining issues, the decision of the trial court is affirmed.

The decision of the trial court is affirmed in part, reversed in part, and remanded, as set forth in this Opinion. Costs on appeal are taxed equally to the Appellants, the Tucker Corporation and Richard Tucker, individually, and to the Appellees, William B. Shearron, Sandra Shearron, James Paul Richardson, Evelyn Juanita Richardson, Estate of Joe L. Richardson, Jr. and Ruby I. Richardson, and their sureties, for which execution may issue if necessary.

_____

HOLLY KIRBY LILLARD, JUDGE